UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTNEY RUNYON,

Plaintiff,

v.

TAYLOR SCHOOL DISTRICT,

Defendant.
_______________________________/

Case No. 2:25-cv-12584

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO COMPEL [14]**

Plaintiff Courtney Runyon sued her former employer, Defendant Taylor School District, for alleged violations of the Americans with Disabilities Act, the Family Medical Leave Act, and the Michigan Persons with Disabilities Civil Rights Act. ECF No. 1. Discovery began on November 5, 2025. ECF No. 6, PageID.61. Per the parties' stipulation, the Court extended discovery to November 2, 2026. ECF No. 10.

On September 23, 2026, Defendant filed a motion to compel signatures for "authorization requests." ECF No. 14. As discussed below, the Court will deny Defendant's motion. In addition, the Court will extend the discovery deadline by one month to December 2, 2026, to give the parties additional time to complete discovery. The Court will also extend the dispositive motion cut-off to December 21, 2026.

**BACKGROUND**

According to her complaint, Runyon began her employment with Defendant as a school nurse in September 2016. ECF No. 1, PageID.3. In February 2023, after an

otherwise "exemplary" tenure as an employee, Runyon requested reasonable accommodations for her qualifying disability: generalized anxiety disorder. *Id.* The accommodations included "a quiet place for Ms. Runyon in her assigned school building(s) and use of her trained service dog, Marini, for panic attack management during work hours." *Id.* Defendant refused to approve Runyon's requested accommodations or "engage in good faith in the interactive process." *Id.* Defendant then subjected Runyon "to ongoing harassment, a hostile environment, and unwarranted and retaliatory discipline after she requested reasonable accommodations." *Id.* at PageID.4. Defendant also cited (or per the complaint, "wrote up") Ms. Runyon for failing to perform jobs that were not in her job description and for requesting days off. *Id.* Meanwhile, Defendant requested additional medical documentation twice to verify Runyon's leave time, and Runyon provided the documents both times. *Id.* By December 2023, Defendant started to require Runyon to report to for work at schools that were outside of her specific job assignment. *Id.*

In early 2024, Runyon filed a charge of disability discrimination and retaliation with the Michigan Department of Civil Rights and a request with Defendant for intermittent leave pursuant to the Family and Medical Leave Act (FMLA). *Id.* Defendant denied Runyon's FMLA intermittent leave request, and Runyon subsequently filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). *Id.* at PageID.4–5. As a result of subsequent EEOC mediation, Defendant agreed to provide reasonable accommodations that Runyon requested, remove any discipline Runyon had received,

and proceed with Runyon's FMLA intermittent leave request. *Id.* at PageID.5. Defendant, however, then allegedly refused to honor the agreement reached through EEOC mediation and failed to provide Runyon with her requested accommodations. *Id.* Defendant further retaliated against Runyon when the school district imposed extra work duties on her, required her to travel throughout the district, denied "bid rights" to her, and subjected her to an increased hostile work environment. *Id.* at PageID.5–6. Defendant eventually approved Runyon's FMLA leave request, and Runyon used it during the 2024–2025 school year. *Id.* at PageID.6. At the end of 2024, however, the lack of reasonable accommodations, harassment, retaliation, and an ongoing hostile work environment caused Runyon to be "constructively discharged from her employment with Defendant." *Id.* Runyon received a right to sue letter from the EEOC on July 22, 2025, and filed the instant complaint on August 19, 2025. PageID.7.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a)(1), "a party may move for an order compelling disclosure or discovery." Discovery matters, including compelling the disclosure of documents and interrogatories, "are committed to the sound discretion of the district court." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (quotation omitted); *see also Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) ("Matters of discovery are in the sound discretion of the district court."). "The burden . . . rests with the party objecting to the motion to compel to show [that] the discovery requests are improper." *Strategic Mktg. & Rsch. Team, Inc. v. Auto Data*

*Sols., Inc.*, No. 2:15-cv-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) (Murphy, J.) (omission in original) (quotation omitted). "[O]nce a party raises an objection to discovery based on relevance, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." *Id.* (quotation omitted). Relevant matters include any information that is "reasonably calculated to lead to the discovery of admissible evidence." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (citation omitted).

**DISCUSSION**

Defendant argued it served "authorization requests" on July 2, 2026, through the company Records Deposition Service (RDS), to Runyon. ECF No. 14, PageID.96. Authorization requests are discovery tools by which the Defendant could seek Runyon's signature to approve the release of her medical records from five different institutions: (1) Henry Ford Hospital; (2) Henry Ford Health System; (3) Heart & Vascular Institute; (4) Corewell Health Dearborn Hospital; and (5) Delta Elite K9 Dog Training. ECF No. 14-1, PageID.104–115. Defendant asserted that each institution possessed documents relevant to Runyon's claims and that receiving them is necessary to determine whether to assert possible defenses. *See* ECF No. 14, PageID.100. Once Runyon signs the authorization requests and approved the release of her records, the five institutions would be able to release to Defendant the documents they hold pertaining to Runyon. *See id.* PageID.98–100.

Runyon, however, never responded to the emails or provided her signature on any of the authorization requests, so RDS sent three reminder emails to her between August 4, 2026, and September 8, 2026. ECF Nos. 14-2, 14-3, 14-4. Runyon still did not respond to the emails or provide her signature and approve the release of her records from the five institutions. ECF No. 14, PageID.97. Defendant stated in its motion that Runyon "has either refused to sign these authorizations or has willfully ignored the correspondence sent by RDS." *Id.* According to Defendant, Runyon's refusal to sign the authorization requests puts its ability to build a defense at a significant disadvantage since the authorization requests cover records critical to Runyon's claims. *Id.*

Without a doubt, the materials Defendant's authorization requests sought are relevant because Runyon has made her health a focal point in the litigation. *See, e.g.*, ECF No. 1, PageID.3 (noting generalized anxiety disorder and the use of a service dog as part of Runyon's reasonable accommodation request). Defendant even explained how certain documents in each institution's possession are relevant to Runyon's claims and possible defenses. ECF No. 14, PageID.98–100. For example, Defendant explained that Runyon's records held by Corewell Health Dearborn Hospital are relevant because Runyon's primary care physician, Dr. Anna M. Hehl-Bisson, is the Hospital's attending physician, and Runyon received physical therapy and treatment for her stroke at the facility. *Id.* at PageID.99 (citing ECF No. 14-5, Page.ID.125–126, 166 (Runyon testifying in her deposition that she received physical therapy and stroke treatment at Corewell Health Dearborn)).

Despite the relevance of Runyon's records that were held by the five institutions, Defendant's argument that Runyon "has either refused to sign these authorizations or has willfully ignored the correspondence sent by RDS," ECF No. 14, PageID.97, is discredited by the emails Runyon attached to her response. Notably, Runyon's Counsel corresponded with Defense Counsel several times to clear up a dispute over the scope of the authorization requests. Runyon's Counsel specifically took issue with the "blanket/blank authorizations that don't specify the documents being sought" and do not have a time limit. ECF No. 16-11, PageID.662–663. Runyon's Counsel emailed her concerns directly to Defense Counsel multiple times and offered to provide the appropriate releases if Defense Counsel provided more specific authorization requests. *Id.* at PageID.659–667. What is more, Runyon attached training records from Delta Elite K-9 Dog Training as part of her initial disclosures, and they appear to satisfy Defendant's authorization request that sought the release of documents in Delta Elite's possession. ECF No. 16, PageID.432; ECF No. 16-6, PageID.627–630. Defendant's motion does not address Runyon's Counsel's attempts to resolve the dispute, and it does not identify any attempt to specify the records it would obtain through the authorization requests and ensure that irrelevant records, like those for Runyon's six children, remain private. *See* ECF No. 16, PageID.440.

The authorization requests Defendant attached to its motion do not include a subpoena or any other narrowing document that tailors any specific authorization request to only documents relevant to Runyon's claim. *See* ECF No. 14-1. Unlike

Defendant's argument about the requests in its motion, the authorization requests sent to Runyon contain no scope that would limit the authorization to only admissible evidence. If Runyon signed the authorization requests as attached by Defendant, *see* ECF No. 14-1, PageID.104–115, she would approve the release of all her records that each institution possesses. In short, Defendant's own authorization requests prove Runyon's Counsel's concerns to be valid because they lack a subpoena or any description that would narrow them to cover only relevant documents.[1] The authorization requests are not therefore "reasonably calculated to lead to the discovery of admissible evidence." *Oppenheimer Fund, Inc.*, 437 U.S. at 352.

The Court will accordingly deny Defendant's motion to compel. Based on the record before the Court, it appears Runyon will sign an authorization for release if the authorization requests are appropriately specified and narrow. *See* ECF No. 16-11, PageID.659 ("I am more than willing to provide appropriate documents and/or releases for documents."). The Court expects Runyon's Counsel to follow through on her representations to Defense Counsel should updated authorization requests meet the appropriate standard.

***

[1] Defendant contended that its request for authorization that covers the Heart and Vascular Institute is relevant because Dr. Amir Kaki, who Defendant believed, based on deposition testimony, performed heart surgery on Runyon, is a provider there. ECF No. 14, PageID.99; ECF No. 14-5, PageID.126. In response, Runyon argued that the request is irrelevant because she never identified the Institute as the treatment provider, only Dr. Kaki as her surgeon. ECF No. 16, PageID.432. The Court need not resolve the dispute, because Defendant's request for authorization is too broad.

It is rather disappointing and somewhat puzzling that Counsel for Defendant could not work with Runyon's Counsel to resolve a minor, and entirely avoidable, discovery dispute. Based on the Court's review of the materials and emails provided by the parties, it is clear Runyon's Counsel consistently attempted to resolve the dispute with little help from Defense Counsel. Everyone knows that the ability to work together well in discovery is crucial for the administration of justice. The parties lacked that ability here. Motions to compel, such as the one at issue here, take up valuable time and resources for the Court to resolve. Going forward, the Court strongly encourages Defense Counsel to work with Runyon's Counsel to resolve discovery disputes before they become messy problems. If further avoidable discovery disputes arise, the Court will not hesitate to appoint a discovery master.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to compel [14] is **DENIED**.

**IT IS FURTHER ORDERED** that the discovery deadline is **EXTENDED** to **December 2, 2026**.

**IT IS FURTHER ORDERED** that the dispositive motion cutoff is **EXTENDED** to **December 21, 2026**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 9, 2026